**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| WILLIAM B. EVERTSEN,<br><br>Plaintiff,<br><br>v.<br><br>BETTER DEBT SOLUTIONS LLC;<br>RANGE VIEW MANAGEMENT LLC d/b/a LENDVIA;<br>BETTER COMPANIES LLC;<br>LENDVIA LLC;<br>MN MGMT LLC;<br>RC MGMT LLC;<br>MOHAMMAD "MATT" GHAFARINIA; and<br>ARSALAN GHANBARI,<br><br>Defendants. | ) | No. 2:26-cv-02076-GJF-KRS |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

## I. NATURE OF THE ACTION

Plaintiff William B. Evertsen ("Plaintiff") brings this action for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of Defendants Better Debt Solutions LLC, Range View Management LLC d/b/a Lendvia, Better Companies LLC, Lendvia LLC, MN MGMT LLC, RC MGMT LLC, Mohammad "Matt" Ghafarinia, and Arsalan Ghanbari (collectively, "Defendants") in negligently, willfully, and continuously contacting Plaintiff on Plaintiff's telephone in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations, and the New Mexico Unfair

Practices Act, NMSA 1978, §§ 57-12-1 to 57-12-26 ("NMUPA"), thereby harassing Plaintiff and invading his privacy.

1. This case involves an aggressive telemarketing campaign by Defendants to sell loan and debt-relief products to Plaintiff without the consent required to contact him.
2. Defendants have been warned of their unlawful conduct by Plaintiff, who requested during the first call that the calls stop; by numerous other plaintiffs across the country who have brought similar actions against Defendants; and by a state regulator that entered a consent order concerning Better Debt Solutions' solicitation practices, as alleged below.
3. Despite these warnings, Defendants did not stop. They continued to contact Plaintiff in violation of federal and New Mexico law, and continued even after Plaintiff filed this action, leaving Plaintiff no choice but to pursue, among other remedies, damages and injunctive relief.
4. Unless otherwise indicated, any reference to a named Defendant in this Complaint includes that Defendant's agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.
5. Plaintiff alleges as follows based on personal knowledge as to Plaintiff's own acts and experiences, and on information and belief as to all other matters.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's TCPA claims under 28 U.S.C. § 1331 because those claims arise under the laws of the United States, specifically 47 U.S.C. § 227. See *Mims v. Arrow Financial Services, LLC,* 565 U.S. 368 (2012).

7. This Court has supplemental jurisdiction over Plaintiff's NMUPA claim under 28 U.S.C. § 1367(a) because that claim is so related to the federal claims that it forms part of the same case or controversy under Article III of the United States Constitution.

8. In the alternative, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, as set forth in the Parties section below.

9. This Court has personal jurisdiction over the entity Defendants because they transacted business within New Mexico and committed acts, or caused acts to be committed, within New Mexico within the meaning of New Mexico's long-arm statute, NMSA 1978, § 38-1-16, by directing telemarketing calls into this State and to Plaintiff, and because that conduct caused tortious injury to Plaintiff in New Mexico.

10. The exercise of personal jurisdiction comports with due process. Specific jurisdiction exists where a defendant purposefully directs its activities at residents of the forum, and the plaintiff's injuries arise out of or relate to those activities. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063 (10th Cir. 2008). A telemarketer that directs the same type of solicitation calls at residents of the forum is subject to personal jurisdiction there for a resident's claim, and the area code of the number called does not defeat jurisdiction. *Hood v. American Auto Care, LLC,* 21 F.4th 1216 (10th Cir. 2021); see *Ford Motor Co. v. Montana Eighth Judicial District Court,* 592 U.S. 351 (2021).

11. Upon information and belief, Defendants direct the same prerecorded loan and debt-relief solicitation campaign at residents of New Mexico generally. Plaintiff, a New Mexico resident, received the calls in New Mexico and was injured there. The New York area code of Plaintiff's

number does not change that Plaintiff received the calls and suffered his injury in the State of New Mexico.

12. This Court has personal jurisdiction over Defendants Mohammad "Matt" Ghafarinia and Arsalan Ghanbari because, upon information and belief, each purposefully directed the prerecorded telemarketing campaign into New Mexico, selected New Mexico as a market into which Defendants' calls would be placed, and personally benefited from the campaign's activity in New Mexico, such that the exercise of jurisdiction over each comports with due process. See *Walden v. Fiore,* 571 U.S. 277 (2014); *Dudnikov,* 514 F.3d 1063.
13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, where Plaintiff received Defendants' calls at his residence in Luna County, New Mexico.

## III. PARTIES

14. Plaintiff William B. Evertsen is a natural person and a citizen of the State of New Mexico who resides in Deming, Luna County, New Mexico, within this judicial District.
15. Defendant Better Debt Solutions LLC ("Better Debt Solutions") is a limited liability company formed under the laws of the State of California, California Secretary of State entity number 202250118638, with its principal office at 2525 Main Street, Suite 500, Irvine, California. In the Statement of Information filed with the California Secretary of State on June 11, 2026, File No. BA20261243087, signed under penalty of perjury by Daniel C. Gavilanes, Esq., Better Debt Solutions identifies its managers as Defendants RC MGMT LLC and MN MGMT LLC and describes its type of business as "Marketing services."

16. Upon information and belief, Better Debt Solutions markets and offers the debt-relief products that were the subject of Defendants' telemarketing calls to Plaintiff.

17. Defendant Range View Management LLC ("Range View") is a limited liability company formed under the laws of the State of Wyoming on April 28, 2015, Wyoming filing ID 2015-000685808. Its organizer of record is Capital administrations, LLC. Its registered agent is Paracorp Incorporated, a commercial registered agent located at 1912 Capitol Avenue, Suite 500, Cheyenne, Wyoming. Range View's principal and mailing address of record in Wyoming is 1920 Thomas Avenue, Suite 610, Cheyenne, Wyoming, the address at which Paracorp was listed in the Wyoming record when appointed as registered agent on January 31, 2019. The Wyoming record lists no officers, directors, managers, or members for Range View. Range View's 2026 Wyoming annual report, dated April 2, 2026 and signed "Paya Sadeghi," lists as its contact a telephone number with a California area code, (949) 836-1290, and the email address Psherman@lendbee.com. The Wyoming record further reflects that Range View was administratively dissolved for tax purposes effective June 9, 2018 and reinstated on January 31, 2019, was administratively dissolved for tax purposes a second time effective June 9, 2023 and reinstated on June 29, 2023, and was issued a delinquency notice on April 2, 2026.

18. Range View registered with the California Secretary of State as a foreign limited liability company on August 25, 2017, California file number 201724310500. In the Statement of Information it filed on September 23, 2019, Range View identified Payam Sadeghi as its sole manager or member and as its agent for service of process, in each capacity at 15303 Ventura Boulevard, Suite 1190, Sherman Oaks, California, and described its type of business as

"Marketing." In a Statement of No Change filed July 14, 2021, Range View certified that there had been no change in any of the information contained in that Statement of Information.

19. In the Answer and the Motion to Set Aside Clerk's Default filed in this action, all Defendants, through counsel, identify Range View as "Range View Management LLC d/b/a LendVia." (ECF Nos. 17, 18.)

20. Upon information and belief, Range View is the entity that operated, or caused to be operated, the dialing and message-delivery system used to place the prerecorded telemarketing calls to Plaintiff alleged in this Complaint, and did so as the agent of, with the actual authority of, at the direction of, and for the benefit of the other Defendants, as alleged below.

21. Defendant Lendvia LLC is a limited liability company formed under the laws of the State of California, California Secretary of State entity number 202357919960, with its principal office at 2525 Main Street, Suite 420, Irvine, California. In the Statement of Information filed on March 31, 2025, File No. BA20250650521, signed by Nima Asadi, Lendvia LLC identifies its managers as Defendants MN MGMT LLC and RC MGMT LLC and describes its type of business as "Lender - Personal Loans."

22. Upon information and belief, Lendvia LLC markets and offers the personal loan and debt-relief products that were the subject of Defendants' telemarketing calls to Plaintiff.

23. Defendant Better Companies LLC ("Better Companies") is a limited liability company formed under the laws of the State of California, California Secretary of State entity number B20250085242, with its principal office at 2525 Main Street, Suite 500, Irvine, California. In the Statement of Information filed on July 15, 2025, File No. BA20251474620, Better Companies identifies its manager or member as Defendant Mohammad Ghafarinia, at 2525

Main Street, Suite 500, Irvine, California, and describes its type of business as “Financial Services.”

24. Defendant MN MGMT LLC (“MN MGMT”) is a limited liability company formed under the laws of the State of California, California Secretary of State entity number 202357919943, with its principal office at 2525 Main Street, Suite 500, Irvine, California. In the Statement of Information filed on March 31, 2025, File No. BA20250650565, signed by Nima Asadi, MN MGMT identifies its sole manager or member as Defendant Mohammad Ghafarinia and describes its type of business as “Management Company.” Per the Statements of Information described above, MN MGMT is a manager of Defendants Better Debt Solutions and Lendvia LLC.

25. Defendant RC MGMT LLC (“RC MGMT”) is a limited liability company formed under the laws of the State of California, California Secretary of State entity number 202357919953, with its principal office at 2525 Main Street, Suite 500, Irvine, California. In the Statement of Information filed on May 28, 2026, File No. BA20261142196, signed under penalty of perjury by Daniel C. Gavilanes, Esq., RC MGMT identifies its sole manager or member as Defendant Arsalan Ghanbari and describes its type of business as “Management Company.” Per the Statements of Information described above, RC MGMT is a manager of Defendants Better Debt Solutions and Lendvia LLC.

26. Defendant Mohammad “Matt” Ghafarinia (“Ghafarinia”) is a natural person who, upon information and belief, is a citizen of the State of California. Per the Statements of Information described above, Ghafarinia is the sole manager or member of Defendant MN MGMT and the

manager or member of Defendant Better Companies, and, through MN MGMT, a manager of Defendants Better Debt Solutions and Lendvia LLC.

27. Defendant Arsalan Ghanbari ("Ghanbari") is a natural person who, upon information and belief, is a citizen of the State of California. Per the Statements of Information described above, Ghanbari is the sole manager or member of Defendant RC MGMT and, through RC MGMT, a manager of Defendants Better Debt Solutions and Lendvia LLC.

28. MN MGMT, RC MGMT, and Lendvia LLC bear California Secretary of State entity numbers 202357919943, 202357919953, and 202357919960, respectively, three numbers within a single narrow numerical block. Upon information and belief, the two management entities and Lendvia LLC were registered with the California Secretary of State at or about the same time.

29. Each of Defendants Better Debt Solutions, Lendvia LLC, Better Companies, MN MGMT, and RC MGMT maintains its principal office at 2525 Main Street, Irvine, California, and each designates the same agent for service of process, Nima Asadi, Esq., 19200 Von Karman Avenue, Suite 600, Irvine, California.

30. Better Lead Generation LLC, a non-party affiliate of Defendants, is a limited liability company formed under the laws of the State of California, California Secretary of State entity number 202252119672, with its principal office at 2525 Main Street, Suite 500A, Irvine, California. In the Statement of Information filed on May 21, 2024, File No. BA20240991193, signed under penalty of perjury by Defendant Mohammad Ghafarinia, Better Lead Generation identifies its managers as Defendants RC MGMT LLC and MN MGMT LLC, identifies Nima Asadi, Esq. as its agent for service of process at the same Von Karman Avenue address, and describes its type of business as "Marketing."

31. Each Defendant is a "person" within the meaning of 47 U.S.C. § 153(39).

32. Upon information and belief, every member of each Defendant limited liability company is a citizen of the State of California, and no Defendant is a citizen of the State of New Mexico. Accordingly, complete diversity of citizenship exists between Plaintiff and Defendants.

33. Upon information and belief, Defendants conducted the telemarketing campaign alleged in this Complaint as a common enterprise under common ownership and control, exercised by Defendants Ghafarinia and Ghanbari through the management entities MN MGMT and RC MGMT, from a shared principal place of business, marketing the same loan and debt-relief products, and routing the campaign's calls and callback numbers to the same operation. Within that enterprise, Range View placed the calls, or caused them to be placed, as the agent of the remaining Defendants, acting with their actual authority, at their direction, subject to their control, and for their benefit, and the remaining Defendants accepted the benefits of the campaign, including the consumer inquiries and enrollments it generated.

34. Upon information and belief, Defendants Ghafarinia and Ghanbari directly participated in, authorized, and controlled the telemarketing campaign alleged in this Complaint. As the sole disclosed managers, through MN MGMT and RC MGMT and directly, of the entities that conducted the campaign, they directed and authorized the placement of the prerecorded telemarketing calls, selected the markets, including New Mexico, into which those calls were directed, controlled the operation of the dialing and message-delivery systems, and personally benefited from the revenues the campaign generated. Ghafarinia and Ghanbari were the guiding spirits and central figures of the campaign.

## IV. STATUTORY BACKGROUND

### A. The Telephone Consumer Protection Act

35. In 1991, Congress enacted the TCPA in response to widespread complaints about intrusive telemarketing practices, finding that automated and prerecorded telephone calls were a nuisance and an invasion of privacy.

36. The TCPA makes it unlawful to make any call, other than for emergency purposes or with the prior express consent of the called party, using an artificial or prerecorded voice to deliver a message to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). This prohibition applies independently of whether the call is placed using an automatic telephone dialing system; a call that delivers an artificial or prerecorded voice message violates the statute regardless of the dialing equipment used.

37. The prior express consent that the TCPA requires is the consent of the called party, given before the call is placed. Consent and the existence of an established business relationship are affirmative defenses, and the caller bears the burden of establishing them.

38. The TCPA provides a private right of action to recover actual monetary loss or $500 in damages for each violation of Section 227(b) or its implementing regulations, whichever is greater. A court may increase the award up to three times that amount if it finds that the defendant willfully or knowingly violated the statute. 47 U.S.C. § 227(b)(3).

39. The TCPA also directed the Federal Communications Commission to protect the privacy rights of telephone subscribers, and the resulting regulations prohibit telephone solicitations to residential subscribers who have registered their numbers on the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). The Commission has determined that

wireless subscribers who place their numbers on the National Do-Not-Call Registry are treated as residential subscribers.

40. A person who has received more than one telephone solicitation within any twelve-month period in violation of the regulations prescribed under Section 227(c), including 47 C.F.R. § 64.1200(c)(2), has a private right of action to recover the greater of his actual monetary loss or up to $500 per violation, which a court may increase to up to $1,500 per violation for willful or knowing violations. 47 U.S.C. § 227(c)(5).

41. The implementing regulations also require entities that engage in telemarketing to institute procedures for maintaining an internal do-not-call list and to honor do-not-call requests. 47 C.F.R. § 64.1200(d).

42. A corporate officer who directly participates in or personally authorizes conduct that violates the TCPA may be held personally liable. See, e.g., *Texas v. American Blastfax, Inc.,* 164 F. Supp. 2d 892 (W.D. Tex. 2001).

**B. The New Mexico Unfair Practices Act**

43. The New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to 57-12-26 (the "NMUPA"), prohibits unfair or deceptive trade practices and unconscionable trade practices in the conduct of trade or commerce. NMSA 1978, § 57-12-3.

44. The NMUPA specifically regulates telephone solicitation sales. It is unlawful to use an automated telephone dialing or push-button or tone-activated address signaling system with a prerecorded message to solicit a person to purchase goods or services unless there is an established business relationship between the persons and the person being called consents to hear the prerecorded message. NMSA 1978, § 57-12-22(A).

45. It is unlawful under the NMUPA to make a telephone solicitation for the purchase of goods or services without disclosing, within fifteen seconds of the time the person called answers, the name of the sponsor and the primary purpose of the contact. NMSA 1978, § 57-12-22(B)(1).

46. It is unlawful under the NMUPA to make a telephone solicitation of a residential subscriber whose telephone number has been on the National Do-Not-Call Registry for at least three months before the call is made, and to use a method to block or otherwise intentionally circumvent a residential subscriber's caller identification service. NMSA 1978, § 57-12-22(C)(1), (C)(2).

47. The prohibitions of Section 57-12-22 apply to telephone solicitations made to cellular telephone numbers, and are not limited to landlines. See *Mohon v. Agentra LLC,* 400 F. Supp. 3d 1189 (D.N.M. 2019).

48. A violation of Section 57-12-22 is a violation of the NMUPA. NMSA 1978, § 57-12-24.

49. The NMUPA provides a private right of action. A person who suffers loss as a result of an unfair or deceptive trade practice may recover actual damages or one hundred dollars ($100), whichever is greater. If the trier of fact finds that the practice was willful, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater. The court shall award reasonable attorney fees and costs to a prevailing complaining party. NMSA 1978, § 57-12-10.

50. New Mexico does not maintain a separate state do-not-call list and relies on the National Do-Not-Call Registry. Registration on the National Do-Not-Call Registry is sufficient for protection under both federal law and the NMUPA.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff and His Cellular Telephone Line

51. Plaintiff incorporates by reference all allegations set forth above as though fully set forth herein.

52. At all times relevant to this Complaint, Plaintiff maintained and used a cellular telephone line assigned the telephone number (212) 365-8702 (the "Cellular Line").

53. Plaintiff is the subscriber, account holder, and sole customary user of the Cellular Line. The Cellular Line is a personal line, used by Plaintiff for personal, residential, and household purposes. It is not a business line, is not held in the name of any business, is not published or advertised in connection with any business, and is not used to conduct any business.

54. Plaintiff received the calls at issue on the Cellular Line while physically present at his residence in Deming, Luna County, New Mexico.

55. On January 19, 2012, Plaintiff registered the Cellular Line on the National Do-Not-Call Registry, where it has remained at all times since. A true and correct copy of Plaintiff's registration confirmation is attached as Exhibit 1.

56. Plaintiff registered the Cellular Line on the National Do-Not-Call Registry in order to obtain relief from unwanted and intrusive telemarketing calls.

### B. Defendants and Their Telemarketing Operation

57. Defendants are engaged in the business of marketing and selling consumer financial products, including personal loans and debt-relief services. Lendvia LLC describes its business to the California Secretary of State as "Lender - Personal Loans"; Better Debt Solutions describes its

business as “Marketing services”; and Better Companies describes its business as “Financial Services.”

58. Defendants market these products to consumers through telemarketing, including by delivering prerecorded voice messages to consumers’ cellular telephones.

59. Lendvia is a name under which Range View markets these products; Defendants’ filings in this action identify Range View as “Range View Management LLC d/b/a LendVia.” (ECF Nos. 17, 18.) Defendants Lendvia LLC and Better Debt Solutions market the loan and debt-relief products that are the subject of the calls to Plaintiff.

60. Defendants have been named in a panoply of other actions across the country alleging the same or similar unlawful telemarketing practices, including, but not limited to, *Rutila v. Range View Management LLC*, No. 2:25-cv-10839-TGB-KGA (E.D. Mich.); *Aurandt v. Range View Management LLC*, No. 3:25-cv-05785-BHS (W.D. Wash.); and *Hubbuch v. Better Debt Solutions LLC*, No. 2:26-cv-02389-PKC-TAM (E.D.N.Y.), as further alleged in Section V.G below.

**C. The Calls to Plaintiff**

61. Between January 28, 2026 and July 2, 2026, Plaintiff received on the Cellular Line at least eighty-five (85) telephone calls that connected and that appear in the billing records of Plaintiff’s wireless carrier, each placed by or on behalf of Defendants as part of the telemarketing campaign alleged in this Complaint.

62. Each of these calls delivered, or opened with, a message using an artificial or prerecorded voice. Plaintiff personally heard the prerecorded message on the calls he answered. Beginning June 4, 2026, Plaintiff preserved audio recordings of the calls; thirteen (13) recordings exist,

and each captures the same prerecorded solicitation script, varying only in the persona name given, the callback number delivered, and the trade name used.

63. The prerecorded messages follow the same template from call to call, rotating the fabricated persona that purports to be speaking. A representative message states, in a voice identifying itself by such a persona:

> *I was reviewing your file today, and there was something that caught my attention based on the information available to me. You are qualified for up to thirty-six thousand dollars at 5.99 percent, with payments around 580 per month or about 290 dollars bi-weekly. Dial one now or call me at 888-310-1184. . . . Press 9 to opt out. . . . Based on the phone number you are calling from, we have located an account or application associated with this number. Press 2 for updates regarding a pending application loan review.*

64. The audio recordings described in paragraph 62 capture this script, varying only in the persona name, the callback number, the trade name, and the loan amount quoted.

65. The prerecorded messages direct the recipient to call a toll-free number to pursue the solicited loan, and that number rotates from message to message. The callback numbers Plaintiff has documented are 888-310-1184, 855-883-0518, 844-515-1667, 866-386-5423, 866-771-6679, 877-372-0727, 833-684-0693, 844-502-3016, 866-771-6202, and 888-310-4382.

66. In addition to the connected calls, Plaintiff's device logged dozens of further incoming call events from the campaign that did not connect. At least thirty-three (33) of those events are attributable to the same campaign because they originated from toll-free numbers or from the same originating lines used for connected campaign calls. Nine of the non-connected events deposited voicemail messages, which Plaintiff preserved.

67. These figures understate the campaign. The carrier's billing records list connected calls only; calls that were declined or that never reached voicemail do not appear in them. The full extent of the campaign is recorded in Defendants' own dialing records.

68. The following calls are representative examples, including without limitation:

| **Date and Time (MT)** | **Caller ID Displayed** | **Callback Number Delivered** | **Persona and Trade Name Stated** | **Recording** |
|---|---|---|---|---|
| Jan. 28, 2026, 5:41 p.m. | 614-503-4018 | | | N |
| Jan. 28, 2026, 6:00 p.m. | 951-395-7716 | | | N |
| Feb. 24, 2026, 9:50 a.m. † | 855-755-0303 | | | N |
| Mar. 2, 2026, 9:40 a.m. | 855-205-2780 | | | N |
| Mar. 2, 2026, 5:17 p.m. | 830-262-5090 | | | N |
| Apr. 23, 2026, 9:21 a.m. | 585-252-6797 | | | N |
| Apr. 23, 2026, 4:55 p.m. | 518-246-3024 | | | N |
| Jun. 1, 2026, 1:12 p.m. | 855-755-0303 | | | N |
| Jun. 4, 2026, 3:00 p.m. | 518-246-3093 | | "Isha"; United Lending | Y |
| Jun. 4, 2026, 5:07 p.m. | 609-326-8701 | | Seventeen-minute call; live representative reached | N |
| Jun. 9, 2026, 6:07 p.m. | 910-786-2002 | 866-386-5423 | "Mia Mitchell"; United Financial Services; $38,000 quoted | Y |
| Jun. 11, 2026, 4:44 p.m. | 941-931-9871 | 866-771-6679 | "Mandy McQueen"; United Financial Services; $58,000 quoted | Y |

| Date and Time (MT) | Caller ID Displayed | Callback Number Delivered | Persona and Trade Name Stated | Recording |
|---|---|---|---|---|
| Jun. 12, 2026, 5:22 p.m. | 772-900-8272 | 844-515-1667 | "Michelle Cummings"; Providence Personal Lending; $33,000 quoted | Y |
| Jun. 15, 2026, 4:50 p.m. | 641-631-3779 | 888-310-1184 | "Kylie Kensington"; Providence Personal Lending; $36,000 quoted | Y |
| Jun. 17, 2026, 5:56 p.m. | 518-819-2663 | 888-310-1184 | "Kylie Kensington"; Providence Personal Lending; $36,000 quoted | Y |
| Jun. 19, 2026, 5:52 p.m. | 304-803-8195 | 877-372-0727 | "Melissa Cleaver"; Providence Personal Lending | Y |
| Jun. 23, 2026, 5:58 p.m. | 681-224-6762 | 833-684-0693 | "Mikey Matthews"; Providence Personal Lending; $40,000 quoted | Y |
| Jun. 23, 2026, 5:24 p.m. ‡ | 833-241-2797 | | | VM |
| Jun. 24, 2026, 5:15 p.m. | 518-554-9016 | 844-502-3016 | "Emily Elston"; $35,000 quoted | Y |
| Jun. 29, 2026, 5:46 p.m. | 302-782-0591 | 866-771-6202 | "Catherine Jones"; Heritage Covenant Financial | Y |
| Jul. 1, 2026, 2:45 p.m. | 877-670-5094 | | "Charles"; Iroview Financial | Y |
| Jul. 2, 2026, 6:03 p.m. | 267-725-1965 | 888-310-4382 | "Angela Loughton"; Heritage Covenant Financial | Y |

Blank cells indicate details not documented for that call; Plaintiff began recording calls on June 4, 2026. † This call did not connect. ‡ This call did not connect; it deposited a voicemail message, which Plaintiff preserved.

69. During the first call, on January 28, 2026, the prerecorded message offered removal from the calling list through a keypad prompt. Plaintiff pressed "9" to request removal. The removal prompt Plaintiff used is the same "Press 9 to opt out" prompt quoted in paragraph 63. The calls did not stop. Defendants thereafter placed at least eighty-four (84) further connected calls to the Cellular Line.

70. The connected calls displayed originating numbers spanning at least forty-nine (49) different area codes. The displayed numbers included sequential number blocks. Connected calls came from 585-252-6766, 585-252-6794, 585-252-6795, 585-252-6797, and 585-252-6826, with additional non-connected events from 585-252-6749, 585-252-6752, and 585-252-6788, and connected calls came from 518-246-3020, 518-246-3024, 518-246-3093, and 518-246-3125, including 518-246-3093, the number that delivered the recorded June 4 call. Upon information and belief, the displayed originating numbers were spoofed or rotated to evade identification and call blocking.

71. Certain calls displayed toll-free originating numbers, including 855-205-2780, 855-755-0303, 833-241-2797, and 877-670-5094, and additional toll-free numbers appear among the non-connected call events. The same toll-free line, 855-755-0303, appears as a non-connected call event on February 24, 2026, and as a connected prerecorded call on June 1, 2026.

72. The prerecorded messages and the live representatives who followed them identified themselves using rotating fabricated personas, including but not limited to “Kylie Kensington,” “Blake Morgan,” “Michelle Cummings,” “Isha,” “Mia Mitchell,” “Mandy McQueen,” “Melissa Cleaver,” “Mikey Matthews,” “Emily Elston,” “Catherine Jones,” “Charles,” and “Angela Loughton,” and rotating trade names, including Providence Personal Lending, United Financial Services, Secure One, United Lending, Heritage Covenant Financial, and Ironview Financial. The messages quoted purported pre-approved loan amounts ranging from $33,000 to $58,000.

73. Neither the prerecorded messages nor the live representatives identify, within the first fifteen seconds of the call or at any point, the entity responsible for the call. The persona that purports

to be speaking is fabricated, and changes from call to call, and the trade names given by live representatives change from call to call and correspond to no entity responsible for the calls.

74. The live representatives have falsely asserted that Plaintiff "recently inquired about a personal loan" and that an "account or application" is "associated with" the Cellular Line, and the prerecorded script makes the same representation. Plaintiff made no such inquiry and submitted no such application.

75. On June 4, 2026, following the prerecorded opening of the 5:07 p.m. call, Plaintiff remained on the line with a live representative for approximately seventeen (17) minutes for the purpose of identifying the operation behind the calls, as alleged in Section V.E below.

76. The calls continued after Plaintiff filed this action on June 29, 2026, including connected prerecorded calls on July 1 and July 2, 2026, and additional non-connected call events thereafter.

**D. Attribution to Defendants**

77. Upon information and belief, the calls described above were placed by Defendants, or by others acting on Defendants' behalf and at their direction, as part of Defendants' telemarketing campaign to sell loan and debt-relief products.

78. The products solicited in the calls, personal loans and debt-relief services, are the products that Defendants market and sell, as alleged above. Lendvia LLC describes its business to the California Secretary of State as "Lender - Personal Loans," and Better Debt Solutions describes its business as "Marketing services."

79. The calls follow a recurring method of operation: a prerecorded loan-approval message delivered by a fabricated persona, a live representative who identifies the operation by a

shifting trade name, originating caller identification that is spoofed and rotated, and a toll-free callback number that the recipient is directed to call. Upon information and belief, this is the same method of operation that these Defendants employed in the *Rutila*, *Aurandt*, and *Hubbuch* actions identified below.

80. A callback number embedded in an automated message must route to the operation that placed the calls in order to serve its purpose of generating return contact. Unlike the spoofed originating numbers displayed on the calls, a toll-free callback number must be a working number held through the Toll-Free Number Registry by a Responsible Organization of record for the benefit of an identifiable customer.

81. Upon information and belief, the ten toll-free callback numbers identified in paragraph 65 route to, and are controlled by or on behalf of, Defendants' operation.

82. Queries of the Toll-Free Number Registry administered by Somos, Inc., conducted on or around July 31, 2026, return the same single Responsible Organization of record, Hypercube Networks, LLC, for each of the ten callback numbers. All ten callback numbers used across the campaign's rotating messages, personas, and trade names are held through a single Responsible Organization. Upon information and belief, the ten numbers are held for a single customer or commonly controlled group of customers: Defendants' operation.

83. Certain of the campaign's calls also displayed toll-free originating numbers, as alleged in paragraph 71. Those numbers are likewise held through Responsible Organizations of record in the Toll-Free Number Registry and are traceable to the customer for whom they are held.

84. Upon information and belief, the trade names by which the prerecorded messages and live representatives have identified the operation, including Providence Personal Lending, United

Financial Services, Secure One, United Lending, Heritage Covenant Financial, and Ironview Financial, are names used by or on behalf of Defendants in the course of the campaign and do not correspond to any independent entity responsible for the calls. Defendants' own filings in this action identify Range View Management LLC as doing business under the assumed name "LendVia" (ECF Nos. 17, 18), and, in *Collins v. Better Debt Solutions*, No. 8:24-cv-01263 (C.D. Cal.), a notice of appearance filed by counsel for the defendants there identified "Range View Management LLC d/b/a Lendvia" and "Lendvia LLC d/b/a Lendvia Financial d/b/a One Street Financial." (*Collins* ECF No. 56.) Defendants' use of rotating assumed names is a practice, not an accident of pleading.

85. Following Plaintiff's June 4 and June 5, 2026 contacts alleged in Section V.E below, in which Plaintiff provided only an email address, Defendant Better Debt Solutions, through an agent identifying himself in writing as Eric Macias of Better Debt Solutions, contacted Plaintiff at that email address and stated that he would be Plaintiff's point of contact going forward.

86. The communication described in the preceding paragraph connects the calls to Better Debt Solutions directly: contact information that Plaintiff provided only in response to the campaign's calls was used, promptly and without any other possible source, by a self-identified Better Debt Solutions representative. Upon information and belief, the communication confirms that Better Debt Solutions is among the entities responsible for, and benefiting from, the telemarketing campaign directed at Plaintiff.

87. Defendants market both loan products and debt-relief products, and the campaign directed at Plaintiff encompassed both. Upon information and belief, the prerecorded loan solicitations

and Better Debt Solutions' debt-relief outreach to Plaintiff are components of a single, coordinated telemarketing operation conducted by Defendants as a common enterprise.

88. Defendant Range View is the entity that operated, or caused to be operated, the dialing and message-delivery system used to place the calls, as alleged above. In doing so, Range View acted as the agent of the remaining Defendants, with their actual authority, at their direction, subject to their control, and for their benefit. Upon information and belief, the remaining Defendants market the solicited products, control and direct the operation, or both, as alleged in the Parties section above, and accepted and retained the benefits of the campaign, including the consumer contacts and enrollments it generated, with knowledge of the manner in which those benefits were obtained.

**E. Absence of Consent and of Any Business Relationship**

89. Before Defendants began placing the calls described above, Plaintiff had no relationship of any kind with any Defendant and had never heard of Defendants.

90. Plaintiff never provided prior express consent, in any form, oral or written, for Defendants or anyone acting on their behalf to place calls to the Cellular Line. No person was authorized to provide such consent on Plaintiff's behalf. Plaintiff is aware of no person who purported to do so, and any person who may have done so acted without Plaintiff's authorization or knowledge.

91. Plaintiff never submitted the Cellular Line's number to Defendants, to any of Defendants' websites, or to any of Defendants' affiliates or marketing partners, and never requested information about Defendants' products.

92. At no time did any established business relationship exist between Plaintiff and any Defendant.

93. Plaintiff did not want Defendants' calls and took steps to stop them. Plaintiff registered the Cellular Line on the National Do-Not-Call Registry on January 19, 2012, fourteen (14) years before the calls began. During the first call, on January 28, 2026, Plaintiff pressed "9" to request removal from the calling list, as alleged in paragraph 69. Defendants continued, and continue, to place calls to the Cellular Line notwithstanding.

94. On a single occasion, on or about June 4, 2026, more than four months after the calls began, Plaintiff visited the website lendvia.com for the sole purpose of identifying the entities responsible for the calls he was receiving. Plaintiff conducted the visit from an isolated computing environment established for that investigative purpose, and preserved records of the visit. During the visit, Plaintiff viewed only the publicly available About and Terms of Use pages. Plaintiff entered no information, submitted no form, provided no telephone number, created no account, and made no purchase or application. Plaintiff was not presented with, and did not click, accept, or otherwise assent to, any consent mechanism, terms of service, arbitration provision, or agreement of any kind.

95. On June 4 and June 5, 2026, Plaintiff engaged with Defendants' operation for the same identification purpose: he remained on the line with a live representative during the June 4 call alleged in paragraph 75, and he thereafter provided an email address. That email address is the only item of contact information Plaintiff ever provided to Defendants or their agents. Plaintiff never provided the Cellular Line's number, which Defendants already possessed and had already been calling for more than four months. At no time did Plaintiff seek to purchase, apply for, or obtain Defendants' products.

96. At least sixty-six (66) of the connected calls alleged in this Complaint preceded June 4, 2026. No act of Plaintiff's on or after June 4, 2026 could constitute prior express consent for any call placed before that date, and nothing Plaintiff did on or after June 4, 2026 constituted consent to receive calls in any event.

97. No Defendant has identified to Plaintiff any record of consent concerning the Cellular Line, and Plaintiff is aware of none.

**F. Harm to Plaintiff**

98. Defendants' calls invaded Plaintiff's privacy and seclusion, occupied and disrupted the Cellular Line, caused Plaintiff to waste time receiving and addressing the calls and messages, depleted the Cellular Line's resources, and caused Plaintiff aggravation and nuisance.

99. Defendants' calls were a nuisance and an invasion of the privacy that Plaintiff sought to protect by registering the Cellular Line on the National Do-Not-Call Registry.

100. The calls are continuing, and absent injunctive relief, Plaintiff remains subject to ongoing and future violations.

**G. Pattern, Notice, and Prior Proceedings**

101. Defendants' telemarketing practices have been the subject of repeated federal litigation and state regulatory action, all predating the calls to Plaintiff.

102. In 2024, Defendants Range View, Better Debt Solutions, and Lendvia LLC, together with an affiliated entity, Better Tax Relief, LLC, jointly moved the United States Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407 to centralize the federal TCPA actions then pending against them. *In re Range View Mgmt., LLC, Tel. Consumer Prot. Act (TCPA) Litig.*, MDL No. 3123 (J.P.M.L. Oct. 4, 2024), ECF No. 32. The Panel described those actions as

sharing common factual questions arising from allegations that these defendants placed telemarketing calls to plaintiffs' cellular telephones using a prerecorded or artificial voice, without the plaintiffs' consent, and placed calls to numbers listed on the National Do-Not-Call Registry. The Panel denied centralization by order entered October 4, 2024. (MDL No. 3123, Doc. 32.)

103. The actions before the Panel, per Schedule A to its order, were *Collins, et al. v. Better Debt Solutions, LLC, et al.*, No. 8:24-cv-01263 (C.D. Cal.); *Pinn v. Better Tax Relief LLC*, No. 4:24-cv-00488 (N.D. Tex.); *Silva v. Lendvia LLC*, No. 3:24-cv-00155 (W.D. Tex.); and *Herrera v. Lendvia LLC*, No. 3:24-cv-00215 (W.D. Tex.). The parties also notified the Panel of a related action pending in the Southern District of Texas.

104. Additional actions alleging the same or similar practices have followed, including the *Rutila*, *Aurandt*, and *Hubbuch* actions identified in paragraph 60 above and two further actions by the Rutila plaintiff, *Rutila v. Range View Management LLC*, No. 2:25-cv-12906 (E.D. Mich.), and *Rutila v. Range View Management LLC*, *et al.*, No. 2:26-cv-11457 (E.D. Mich.).

105. By October 2024 at the latest, more than a year before the calls to Plaintiff began, Defendants Range View, Better Debt Solutions, and Lendvia LLC were simultaneously defending multiple federal actions alleging prerecorded-voice and Do-Not-Call violations of the TCPA, and were coordinating their response to those actions through joint motion practice before the Panel. Defendants knew of the TCPA's requirements, and knew that their telemarketing practices were alleged to violate them, before and throughout the campaign directed at Plaintiff.

106. On October 8, 2024, the Minnesota Department of Commerce entered a Consent Order as to Defendant Better Debt Solutions. *In re Better Debt Sols. LLC*, No. 89165/MS (Minn. Dep't of Com. Oct. 8, 2024) (consent order). The Commissioner of Commerce alleged that Better Debt Solutions is a debt settlement lead generator that engages Minnesota consumers, that its advertisements and solicitations made statements creating the likelihood of consumer confusion or misunderstanding regarding its services, and that its advertisements failed to provide required verbatim disclosures. Better Debt Solutions, acting through its General Counsel and while represented by counsel, consented to entry of the Order, neither admitting nor denying the allegations. The Order required Better Debt Solutions to pay a civil penalty of $10,000, of which $3,000 was stayed conditioned on compliance with law through September 24, 2027, and to refrain from further violations.

107. The Commissioner's allegations concerned the same character of conduct alleged in this Complaint: solicitations that confuse and mislead consumers about who is calling and what is being offered. The calls to Plaintiff, delivered under fabricated personas and rotating trade names and falsely asserting that Plaintiff had a pending application, were placed during the period in which the stayed portion of the Minnesota penalty remained conditioned on Better Debt Solutions' compliance with law.

108. Notwithstanding this litigation and regulatory history, Defendants placed at least eighty-five (85) connected calls to Plaintiff's Cellular Line between January 28, 2026 and July 2, 2026, continued placing calls after Plaintiff requested removal during the first call, and continued placing calls after Plaintiff filed this action. Defendants' violations were knowing and willful.

## VI. CAUSES OF ACTION

### COUNT I: Telephone Consumer Protection Act (Artificial or Prerecorded Voice), 47 U.S.C. § 227(b)(1)(A)(iii)

109. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

110. The Cellular Line is a telephone number assigned to a cellular telephone service within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

111. Defendants, and those acting on their behalf and at their direction, made or caused to be made at least eighty-five (85) calls to the Cellular Line that delivered a message using an artificial or prerecorded voice, as alleged above, including each of the calls set forth in the table at paragraph 68 and the thirteen calls captured in the recordings described in paragraph 62.

112. None of these calls were made for an emergency purpose.

113. Plaintiff did not give prior express consent, in any form, for any Defendant, or anyone acting on a Defendant's behalf, to place these calls to the Cellular Line, as alleged in Section V.E.

114. Each call to the Cellular Line that used an artificial or prerecorded voice, made without Plaintiff's prior express consent and not for an emergency purpose, separately violated 47 U.S.C. § 227(b)(1)(A)(iii). Range View placed or caused these calls to be placed as the agent of the remaining Defendants, acting with their actual authority, at their direction, subject to their control, and for their benefit, and the remaining Defendants accepted and retained the benefits of the campaign. The remaining Defendants are liable for each violation because they directly participated in, authorized, and controlled the campaign, and under the agency and

common-enterprise allegations set forth above. Defendants Ghafarinia and Ghanbari are personally liable for their direct participation in, authorization of, and control over the campaign, as alleged in paragraphs 26, 27, and 34 above.

115. As a result of each violation, Plaintiff is entitled to recover the greater of his actual monetary loss or $500 in statutory damages under 47 U.S.C. § 227(b)(3)(B).

116. Defendants' violations were willful and knowing. Defendants conducted the campaign deliberately; used rotating fabricated personas, rotating trade names, and spoofed and rotated caller identification to evade identification and call blocking; continued placing calls after Plaintiff pressed "9" to request removal during the first call on January 28, 2026; continued placing calls after Plaintiff filed this action; and did so after more than a year of notice, through the litigation and regulatory proceedings alleged in Section V.G, that this conduct was alleged to be unlawful. Under 47 U.S.C. § 227(b)(3), the Court may, in its discretion, increase the award to an amount not more than three times the statutory damages otherwise available for each willful or knowing violation.

**COUNT II: Telephone Consumer Protection Act (Do-Not-Call), 47 U.S.C. § 227(c)**

117. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

118. The Cellular Line has been registered on the National Do-Not-Call Registry since January 19, 2012, more than three months before any call at issue, and remained registered throughout the period of the calls.

119. Plaintiff uses the Cellular Line for personal, residential, and household purposes and is a residential subscriber entitled to the protections the regulations afford such subscribers, as

alleged in Section V.A. A wireless subscriber who registers a number on the National Do-Not-Call Registry is entitled to those protections.

120. The calls described above were telephone solicitations made to encourage Plaintiff's purchase of Defendants' loan and debt-relief products, including by quoting purported pre-approved loan amounts, as alleged in Sections V.B and V.C.

121. Defendants, and those acting on their behalf, made far more than one telephone solicitation to the Cellular Line within a twelve-month period in violation of the regulations prescribed under 47 U.S.C. § 227(c), including 47 C.F.R. § 64.1200(c)(2).

122. Defendants further failed to institute and honor the internal do-not-call procedures required of telemarketers under 47 C.F.R. § 64.1200(d). Defendants' own prerecorded script offered removal through a "Press 9 to opt out" prompt, as quoted in paragraph 65; Plaintiff used that prompt during the first call; and Defendants thereafter placed at least eighty-four (84) further connected calls to the Cellular Line, as alleged in paragraph 65. Range View placed or caused these calls to be placed as the agent of the remaining Defendants, acting with their actual authority, at their direction, subject to their control, and for their benefit, and the remaining Defendants accepted and retained the benefits of the campaign. The remaining Defendants are liable for each violation because they directly participated in, authorized, and controlled the campaign, and under the agency and common-enterprise allegations set forth above. Defendants Ghafarinia and Ghanbari are personally liable for their direct participation in, authorization of, and control over the campaign, as alleged in paragraphs 26, 27, and 34 above.

123. Under 47 U.S.C. § 227(c)(5), Plaintiff, having received more than one telephone call within a twelve-month period by or on behalf of Defendants in violation of the regulations prescribed

under that subsection, is entitled to recover his actual monetary loss or up to $500 in damages for each such violation, whichever is greater. Because Defendants' violations were willful and knowing, for the reasons alleged in paragraph 116, the Court may, in its discretion, increase the award to an amount not more than three times the amount otherwise available.

**COUNT III: New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-3, 57-12-22, 57-12-24**

124. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

125. Defendants engaged in trade and commerce in New Mexico by directing telephone solicitations to Plaintiff in this State to sell loan and debt-relief products. The calls were telephone solicitations within the meaning of NMSA 1978, § 57-12-22.

126. Defendants violated NMSA 1978, § 57-12-22(A) by using an automated telephone dialing system with a prerecorded message to solicit Plaintiff to purchase goods or services without an established business relationship and without Plaintiff's consent to hear the prerecorded message, as alleged in Sections V.C and V.E.

127. Defendants violated NMSA 1978, § 57-12-22(B)(1) by making telephone solicitations without disclosing, within fifteen seconds of Plaintiff's answering, the name of the sponsor and the primary purpose of the call, instead delivering fabricated personas and shifting trade names, as alleged in paragraph 73.

128. Defendants violated NMSA 1978, § 57-12-22(C)(1) by making telephone solicitations to Plaintiff, a residential subscriber whose number had been on the National Do-Not-Call Registry for far more than three months before the calls.

129. Defendants violated NMSA 1978, § 57-12-22(C)(2), and independently engaged in an unfair and deceptive trade practice under NMSA 1978, § 57-12-3, by using methods to block or intentionally circumvent Plaintiff's caller identification service, including by transmitting spoofed and rotated originating numbers spanning at least forty-nine area codes and drawn from sequential number blocks, as alleged in paragraph 70.

130. Defendants further engaged in unfair and deceptive trade practices under NMSA 1978, § 57-12-3 by falsely representing that Plaintiff had inquired about a loan and that an account or application was associated with the Cellular Line, in the prerecorded script quoted in paragraph 63 and through the live representatives, as alleged in paragraph 74.

131. Each violation of Section 57-12-22 is a violation of the Unfair Practices Act. NMSA 1978, § 57-12-24. The prohibitions of Section 57-12-22 apply to solicitations made to Plaintiff's cellular telephone. See *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189 (D.N.M. 2019). Range View placed or caused these calls to be placed as the agent of the remaining Defendants, acting with their actual authority, at their direction, subject to their control, and for their benefit, and the remaining Defendants accepted and retained the benefits of the campaign. The remaining Defendants are liable for each violation because they directly participated in, authorized, and controlled the campaign, and under the agency and common-enterprise allegations set forth above. Defendants Ghafarinia and Ghanbari are personally liable for their direct participation in, authorization of, and control over the campaign, as alleged in paragraphs 26, 27, and 34 above.

132. Under NMSA 1978, § 57-12-10(B), Plaintiff is entitled to recover the greater of his actual damages or $100 for each violation. Because Defendants willfully engaged in the trade

practices alleged, the Court may award up to three times actual damages or $300 for each violation, whichever is greater. Plaintiff further seeks reasonable attorney fees and costs under NMSA 1978, § 57-12-10(C).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff William B. Evertsen respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

A. A declaration, pursuant to 28 U.S.C. § 2201, that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to 57-12-26;

B. On Count I, statutory damages of $500 for each call that used an artificial or prerecorded voice, under 47 U.S.C. § 227(b)(3)(B), and, in the Court's discretion, an increase of the award up to three times that amount for each willful or knowing violation under 47 U.S.C. § 227(b)(3);

C. On Count II, damages of up to $500 for each telephone solicitation made in violation of the regulations prescribed under 47 U.S.C. § 227(c), under 47 U.S.C. § 227(c)(5), and, in the Court's discretion, an increase of the award up to three times that amount for each willful or knowing violation;

D. On Count III, the greater of Plaintiff's actual damages or $100 for each violation of the New Mexico Unfair Practices Act and, on a finding of willfulness, up to the greater of three times actual damages or $300 for each violation, together with reasonable attorney fees and costs, under NMSA 1978, § 57-12-10;

E. A permanent injunction prohibiting Defendants, and all those acting in concert with them, from placing further telemarketing calls to the Cellular Line or to Plaintiff;

F. Pre-judgment and post-judgment interest as allowed by law;

G. Plaintiff's costs of suit; and

H. Such other and further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ William B. Evertsen*

William B. Evertsen
Plaintiff, pro se
1300 South Sandburg Drive
Deming, New Mexico 88030
Telephone: (212) 365-8702
Email: will.evertsen@gmail.com

Dated: **August 6, 2026**

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 6th day of August 2026, the foregoing was filed electronically through the CM/ECF system, causing all parties or counsel of record to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

Dated: **August 6, 2026**

By: *_/s/ William B. Evertsen_*

William B. Evertsen
Plaintiff, pro se
1300 South Sandburg Drive
Deming, New Mexico 88030
+1-212-365-8702
will.evertsen@gmail.com